******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

*Syllabus*

The plaintiff lessor sought to recover damages from the defendant university
students and their parents for alleged damage to its rental property
in connection with a lease entered into between the plaintiff and the
defendant students, for which the defendant parents were guarantors.
The rental rate for the period of the lease was $100,000 with a $10,000
security deposit. After the defendant students vacated the premises at
the end of the lease term, the plaintiff claimed that they had caused
damage to the premises that exceeded the amount of the $10,000 security
deposit. In response, the defendants filed a counterclaim, alleging, inter
alia, that the plaintiff violated the applicable security deposit statute
(§ 47a-21), and that the $100,000 prepayment of rent constituted a secu-
rity deposit for purposes of § 47a-21. Subsequently, the parties filed a
signed, joint stipulation of facts with the trial court, which stated that,
pursuant to the lease, the total security deposit was $10,000. Following
a trial, the court rendered judgment in favor of the plaintiff, and the
defendants appealed to this court. *Held*:

1. The plaintiff could not prevail on its claim that the appeal was moot on
the basis that the defendants did not challenge all independent bases
for the trial court's judgment; because this court could provide meaning-
ful relief to the defendants by remanding the matter for a consideration
of their claim that the $100,000 prepayment of rent constituted a security
deposit and, therefore, should have been held in escrow in an interest
bearing account, the appeal was not moot.

2. The trial court improperly rendered judgment in favor of the plaintiff on
the basis of the application of the exemption in the statute (§ 47a-2) for
certain lease arrangements incidental to housing for educational services
from application of title 47a of the General Statutes when the plaintiff
never pleaded the exemption and no evidence was presented at trial
in support thereof: the plaintiff simply denied the allegations of the
defendants' special defenses and counterclaim, and, in its special
defenses, it never claimed an exemption under § 47a-2; moreover, there
was no reference or claim by the plaintiff at trial that it was exempt
from complying with the provisions of title 47a, nor was there any
testimony or evidence relating to whether the lease was incidental to
the educational residence of the defendant students, as found by the
court; accordingly, the defendants did not have sufficient notice at any
time prior to the judgment, of any claim pertaining to the exemption in
§ 47a-2 concerning housing incidental to educational purposes.

3. Although the trial court improperly considered § 47a-2, judgment correctly
was rendered in favor of the plaintiff on the defendants' second amended
counterclaim; the parties filed a signed, joint stipulation of facts with
the court that stated that the total security deposit was $10,000, and,
because during the trial the defendants did not seek to withdraw, explain,
or modify the stipulation, they were bound by their judicial admission,
such that their claim that the $100,000 prepayment of rent also should
have been treated as a security deposit necessarily failed.

Argued March 1—officially released June 1, 2021

*Procedural History*

Action to recover damages for alleged damage to
rental property in excess of the security deposit, and
for other relief, brought to the Superior Court in the
judicial district of Fairfield and transferred to the Hous-
ing Session at Bridgeport, where the defendants filed
a counterclaim; thereafter, the court, *Rodriguez, J.*,
granted in part the plaintiff's motion to strike the defen-

dants' answer, special defenses and counterclaim; subsequently, the parties filed a joint stipulation of facts; thereafter, the matter was tried to the court, *Spader, J.*; judgment for the plaintiff on its complaint and on the defendants' counterclaim, from which the defendants appealed to this court. *Affirmed*.

*Abram Heisler*, for the appellants (defendants).

*Raymond W. Ganim*, for the appellee (plaintiff).

*Opinion*

DEVLIN, J. The defendants[1] appeal from the judgment of the trial court rendered in favor of the plaintiff landlord, Fairfield Shores, LLC. On appeal, the defendants claim that the court improperly rendered judgment in favor of the plaintiff on the basis of its finding that the plaintiff was exempt, pursuant to General Statutes § 47a-2,[2] from application of General Statutes (Rev. to 2013) § 47a-21,[3] the statute governing security deposits, because it provided housing incidental to the education of the defendant students. Although we conclude that the court improperly considered § 47a-2, we, nevertheless, affirm the judgment of the court.

The following factual and procedural history is necessary to our resolution of the claim on appeal. The plaintiff owns property located at 1027 Fairfield Beach Road in Fairfield, on which a three-story, single-family beachfront home (premises) is situated. On February 29, 2012, the defendant students entered into a lease with the plaintiff for the rental of the premises for their senior year, with the lease term running from September 3, 2013, until May 20, 2014, or the day after graduation. The rental rate for the period of the lease was $100,000, and that amount was to be paid in two installments prior to the commencement of the lease: the sum of $50,000 was to be paid on November 1, 2012, and another $50,000 on January 15, 2013. The lease also required a $10,000 security deposit. The defendant parents signed the lease as guarantors.

The plaintiff commenced the present action at the end of the tenancy, on May 18, 2014, claiming that the defendant students had caused damage to the premises that exceeded the amount of the security deposit. Thereafter, the plaintiff provided the defendants with a list of damages, which they disputed. The defendants subsequently filed an amended answer, special defenses, and counterclaim. The court then granted the plaintiff's motion to strike as to the second and third special defenses, leaving the first special defense, which alleged that the claimed damages existed prior to the defendant students' tenancy, and the fourth special defense, which alleged that the plaintiff had failed to comply with certain local and state health and safety requirements. The amended counterclaim alleged, in count one, a violation of the security deposit statute, § 47a-21; in count two, that the plaintiff had failed to comply with municipal and state codes by failing to obtain a certificate of apartment occupancy and by renting the premises to more students than what is permitted by the zoning regulations; and, in count three, a violation of the Connecticut Unfair Trade Practices Act (CUTPA), § 42-110a et seq. The plaintiff denied the allegations of all three counts of the amended counterclaim.

On February 18, 2016, the defendants filed a second amended counterclaim, which alleged, in addition to the claims raised in their amended counterclaim, that the $100,000 prepayment of rent constituted a security deposit for purposes of § 47a-21. On November 18, 2016, the parties filed a signed, joint stipulation of facts with the court. In the stipulation, the parties agreed to certain facts, including, inter alia, that the plaintiff had entered into a tenancy agreement with the defendant students for the rental of the premises for a term commencing on September 3, 2013, and ending on May 20, 2014; that, pursuant to the rental agreement, the total security deposit was $10,000; that the defendant students took possession of and vacated the property per the agreement; that the security deposit was not returned because the plaintiff claimed to have sustained damages exceeding the amount of the security deposit; and that the parties disagreed as to the damages. On December 13, 2018, the plaintiff filed its reply to the defendants' special defenses and its answer to the defendants' second amended counterclaim, denying that the prepaid rent constituted a security deposit and asserting, as one of its special defenses, that the counterclaim was barred by the doctrine of res judicata to the extent that it contradicted the stipulation.

The matter was tried to the court on December 14, 2018. At the trial, Paul Ganim, who testified that he is the owner and manager of the plaintiff, testified regarding the lease agreement and the extent of the damages to the premises that allegedly were caused by the defendant students.[4] Ganim testified that he put the $10,000 security deposit into a security deposit bank account at Webster Bank and that the amount of the security deposit was not sufficient to cover the damages to the premises. The plaintiff also offered testimony from a builder and a painting contractor in support of its claim of damages. After the plaintiff rested, the defendants called one of the defendant parents, Tom Davies, as a witness. He testified regarding a video he took that showed the condition of the premises at the time when his son moved in.

Following the trial, the parties filed posttrial briefs. In their brief, the defendants claimed that most of the alleged damages to the property were preexisting when the defendant students took occupancy and, thus, that the plaintiff had failed to establish that any of the claimed damages were caused by the defendants. Second, they argued that the $100,000 advance rental payment constituted a security deposit under § 47a-21, which required the plaintiff, under § 47a-21 (h), to escrow that payment. Thus, they claimed that the plaintiff's failure to do so violated § 47a-21, and that the plaintiff had violated several other statutes. In contrast, the plaintiff argued in its posttrial brief that the defendants had failed to meet their burden of demonstrating

any statutory violations by the plaintiff. The plaintiff also requested that the court take judicial notice of a lease purportedly used by the University of Connecticut with respect to on campus housing.[5]

In a memorandum of decision dated May 6, 2019, the court rendered judgment in favor of the plaintiff. The court made the following additional findings in its decision. The defendant students had "obtained approval from Fairfield University to utilize the plaintiff's premises as their school housing accommodations for their senior year. The [defendant students] took possession of the premises a few days prior to the commencement of the lease for the agreed upon rate of an additional $1000. Zoning ordinances of the town of Fairfield prohibit more than four unrelated persons to occupy the premises. While the [lease] is only between the plaintiff and four students, without permission of the plaintiff, on August 30, 2013, at least six students moved into the premises.

"The plaintiff had rented the premises for the summer season prior to the [defendant students'] tenancy and did not fully clean, paint, or prepare the premises for the students' possession. The defendants were aware that this upkeep had not occurred, but they had . . . activities [prior to the start of school] they needed to attend to necessitating early possession and so they agreed to take possession of the premises 'as is.' Further, the defendants did not notify the plaintiff of any damage to the premises that they believed [to be] present prior to their taking possession.

"The premises hosted activities typical of what would be expected by Fairfield University seniors living in a beach house. Damages [occurred] early on in the tenancy, which prompted [the] defendants to apply new coating to the floor and patch and paint the walls. By the end of the leasehold, damages occurred that required repairs in an amount less than that claimed by the plaintiff, but more than believed to be due by the defendants." The court further noted that the plaintiff, which alleged that the premises incurred damages in the amount of $20,788.24, sought the amount of damages sustained in excess of the security deposit, plus attorney's fees and costs.

In finding that additional damage to the premises had occurred, the court explained: "Certainly, damage existed to the property prior to the defendants taking possession. There were damages that occurred early on during their tenancy and there was damage caused on their way out. The defendants knew of this damage. During their tenancy, the parents paid to refinish hardwood floors, repair a ceiling hole and repaint. Near the end of the tenancy, [the] defendants employed Merry Maids to clean two rooms whose level of dirtiness proved to surpass the abilities of the students' mothers' cleaning brigade. After the students vacated, Tom

Davies testified that he walked through the house and patched up walls with compound.

"While the defendants' efforts to remedy the damages indicates an awareness on the part of the defendants in contributing to existing damage and the need for repairs, the plaintiff did not substantiate its claim of over $20,000 in damages. The plaintiff's witnesses did, however, establish damages in excess of the $10,000 security deposit." The court found damages in the amount of $10,967.44, which included costs for repainting, refinishing the floors and replacing the countertop, as well as the cost of a water bill that was supposed to have been paid by the defendant students. After accounting for the $10,000 security deposit and interest on the security deposit in the amount of $27.82, the court rendered judgment in favor of the plaintiff in the amount of $939.62.[6]

The court rejected the defendants' request to treat their prepayment of $100,000 in rent for the lease term as a security deposit or an advance rental payment under § 47a-21, as the court found that statute to be inapplicable to the specific rental agreement in this case. Specifically, the court stated: "Pursuant to . . . § 47a-2, certain lease arrangements are exempted from the applications of title 47a. Such agreements are ones including 'residence at an institution, public or private, if incidental to . . . the provision of medical, geriatric, educational, counseling or religious service . . . .'

"While [the] plaintiff certainly is *not* Fairfield University and does not pretend to be, Fairfield University counts the plaintiff among its providers of housing for students in their senior year. There is a student lottery to be placed in off campus housing that includes the plaintiff's premises. Without housing stock such as the plaintiff's being available to the university, it could not provide adequate accommodations for its student population. In the university's student recruitment materials, it prominently advertises the opportunity of living on Fairfield Beach in senior year to attract potential students.

"It is true that the plaintiff also rents this beach house during nonacademic times, however, it sets the premises aside specifically for Fairfield University's academic year to rent to students. The court finds that the prepayment portion of the lease is incidental to the [defendant students'] educational residence and is not a security deposit as defined under . . . § 47a-21." (Emphasis in original.) From the judgment rendered in favor of the plaintiff, the defendants appealed to this court. Additional facts will be set forth as necessary.

I

Before we address the merits of the defendants' claim on appeal, we first address the plaintiff's claim that the appeal is moot. Specifically, the plaintiff claims that

because the defendants, on appeal, challenge only the court's application of the exemption in § 47a-2 and do not challenge the court's finding that they did not meet their burden to prove that the plaintiff failed to deposit the security deposit funds into an escrow account, or its finding that the defendants had the burden to establish that the exemption in § 47a-2 did not apply, the appeal is moot. In essence, the plaintiff's mootness claim is premised on its assertion that the defendants did not challenge all independent bases for the court's judgment. We conclude that the appeal is not moot.

"Mootness is a question of justiciability that must be determined as a threshold matter because it implicates [this] court's subject matter jurisdiction . . . ." (Internal quotation marks omitted.) *State* v. *Lester*, 324 Conn. 519, 526, 153 A.3d 647 (2017). "A determination regarding . . . [this court's] subject matter jurisdiction is a question of law . . . [and, therefore] our review is plenary." (Internal quotation marks omitted.) *Lyon* v. *Jones*, 291 Conn. 384, 392, 968 A.2d 416 (2009). "[I]t is not the province of appellate courts to decide moot questions, disconnected from the granting of actual relief or from the determination of which no practical relief can follow. . . . In determining mootness, the dispositive question is whether a successful appeal would benefit the plaintiff or defendant in any way. . . . [W]hen an appellant challenges a trial court's adverse ruling, but does not challenge all independent bases for that ruling, the appeal is moot." (Citations omitted; emphasis omitted; internal quotation marks omitted.) *State* v. *Lester*, supra, 526–27.

Although the trial court found that the defendants did not prove that the plaintiff failed to escrow the $10,000 security deposit, the court made no finding as to the defendants' claim that the plaintiff violated the security deposit statute by failing to escrow the $100,000 prepayment of rent, which the defendants alleged should have been considered a security deposit. The court never reached that claim in light of its determination that the exemption in § 47a-2 applied. Moreover, contrary to the plaintiff's assertion, the court made no express finding that the defendants had the burden to prove that the exemption did not apply. In its memorandum of decision, the court stated: "[T]he court finds the statutory scheme set forth under [title] 47a to be inapplicable to this specific rental agreement. Further, the defendants fail to point to any Connecticut case authority to prove otherwise." That statement is ambiguous and can hardly be said to be a finding that the defendants had to prove that the exemption did not apply. At a minimum, it is difficult to see how the defendants could refute the application of the exemption when, based on the pleadings and the evidence, they were not put on notice that an exemption under § 47a-2 was an issue to be tried.

Accordingly, because this court could provide meaningful relief to the defendants by remanding the matter for a consideration of whether the $100,000 prepayment of rent constituted a security deposit and, therefore, should have been held in escrow in an interest bearing account, the appeal is not moot. We, therefore, address the merits of the defendants' appeal.

## II

The defendants claim that the court improperly rendered judgment in favor of the plaintiff on the basis of the exemption in § 47a-2 when the plaintiff never pleaded the exemption and no evidence was presented at trial in support thereof. We agree.

We first set forth our standard of review. "The interpretation of pleadings presents a question of law over which our review is plenary." (Internal quotation marks omitted.) *Prime Locations of CT, LLC* v. *Rocky Hill Development, LLC*, 167 Conn. App. 786, 802, 145 A.3d 317, cert. denied, 323 Conn. 935, 150 A.3d 686 (2016). "It is fundamental in our law that the right of a plaintiff to recover is limited to the allegations of [its] complaint." (Internal quotation marks omitted.) *Covey* v. *Comen*, 46 Conn. App. 46, 49, 698 A.2d 343 (1997). "The purpose of the complaint is to limit the issues to be decided at the trial of a case and is calculated to prevent surprise. . . . A complaint should fairly put the defendant on notice of the claims against him. . . . The modern trend, which is followed in Connecticut, is to construe pleadings broadly and realistically, rather than narrowly and technically. . . . Although essential allegations may not be supplied by conjecture or remote implication . . . the complaint must be read in its entirety in such a way as to give effect to the pleading with reference to the general theory upon which it proceeded, and do substantial justice between the parties. . . . As long as the pleadings provide sufficient notice of the facts claimed and the issues to be tried and do not surprise or prejudice the opposing party, we will not conclude that the complaint is insufficient to allow recovery." (Internal quotation marks omitted.) *Prime Locations of CT, LLC* v. *Rocky Hill Development, LLC*, supra, 802–803.

Pursuant to Practice Book § 10-57, a "[m]atter in avoidance of affirmative allegations in an answer or counterclaim shall be specially pleaded in the reply." See also *Romprey* v. *Safeco Ins. Co. of America*, 310 Conn. 304, 317 n.8, 77 A.3d 726 (2013). Moreover, pursuant to Practice Book § 10-3 (a), "[w]hen any claim made in a complaint . . . special defense, or other pleading is grounded on a statute, the statute shall be specifically identified by its number." Our courts, however, "have recognized that the rule embodied in . . . § 10-3 is directory and not mandatory. . . . As long as the defendant is sufficiently apprised of the nature of the action

. . . the failure to comply with the directive of . . . § 10-3 (a) will not bar recovery." (Citations omitted; internal quotation marks omitted.) *Ramondetta* v. *Amenta*, 97 Conn. App. 151, 162, 903 A.2d 232 (2006). This court has recently stated that the failure of a party to plead a specific statute may be overlooked "if the issue is otherwise put before the trial court and no party is prejudiced by the lapse in pleading." (Internal quotation marks omitted.) *Stilkey* v. *Zembko*, 200 Conn. App. 165, 173, 238 A.3d 78 (2020).

Our review of the allegations of the amended complaint demonstrates that the court decided the case on the basis of an issue that was not pleaded by the plaintiff. The plaintiff simply denied the allegations of the defendants' special defenses and counterclaim, and, in its special defenses, the plaintiff never claimed an exemption under § 47a-2 in response to the defendants' second amended counterclaim, which alleged a violation of § 47a-21. Furthermore, our examination of the transcript of the proceedings before the trial court does not reveal any reference or claim by the plaintiff at trial that it was exempt from complying with the provisions of title 47a of the General Statutes, nor does it show any testimony or evidence relating to whether the lease was incidental to the educational residence of the defendant students, as found by the court. In fact, there is no evidence in the record that supports the court's findings regarding Fairfield University and how the university relies on the plaintiff to provide housing for its students.

On the basis of the record, we cannot conclude that the defendants had sufficient notice, at any time prior to the judgment, of any claim pertaining to the exemption in § 47a-2 concerning housing incidental to educational purposes. This court has stated that "[t]he concept of notice concerns notions of fundamental fairness, affording parties the opportunity to be apprised when their interests are implicated in a given matter." (Internal quotation marks omitted.) *Michalski* v. *Hinz*, 100 Conn. App. 389, 399, 918 A.2d 964 (2007). In the present case, the defendants had no warning that the case would be decided on the basis of the exemption when it had not been pleaded, argued or briefed.[7] See *Prime Locations of CT, LLC* v. *Rocky Hill Development, LLC*, supra, 167 Conn. App. 808. Because the exemption in § 47a-2 was not raised at any stage of the proceedings, it was improper for the court to consider the exemption and base its decision thereon. See *Michalski* v. *Hinz*, supra, 394 (defendant was not sufficiently apprised that statute was at issue where plaintiff never alleged violation of statute at any stage of proceedings); *Covey* v. *Comen*, supra, 46 Conn. App. 50–51 (plaintiff was prejudiced where court rendered judgment for defendants on basis of theory that was not pleaded in counterclaim).[8]

Although we have determined that the court improp-

erly applied the exemption in § 47a-2 in rendering judgment for the plaintiff, that does not end our inquiry, as we must examine whether the judgment in favor of the plaintiff is, nevertheless, proper, without application of the exemption. This court has long held that "[a]n appellate court may affirm the judgment of the trial court although it may have been grounded on a wrong reason. See *Geremia* v. *Geremia*, 159 Conn. App. 751, 779, 125 A.3d 549 (2015); see also Practice Book § 10-33." *Jobe* v. *Commissioner of Correction*, 181 Conn. App. 236, 237–38 n.3, 186 A.3d 1219 (2018), aff'd, 334 Conn. 636, 224 A.3d 147 (2020). We conclude that the court reached the proper judgment, notwithstanding its improper application of the exemption in § 47a-2.

The defendants have limited[9] their appeal from the court's judgment to the portion of their second amended counterclaim alleging a violation of § 47a-21 as a result of the plaintiff's failure to treat the $100,000 prepayment of rent as a security deposit that was required to be escrowed. The court, in rejecting this claim, determined that the parties' rental agreement was not subject to the requirements of § 47a-21 because the prepayment portion of the lease was incidental to the educational residence of the defendant students and, thus, was exempt from application of the security deposit statute under § 47a-2. Although the court's rejection of this claim in the second amended counterclaim on the basis of the exemption under § 47a-2 was improper, we agree with the plaintiff's proffered alternative ground for affirmance as follows.

As the plaintiff notes in its appellate brief, on November 18, 2016, the parties filed a signed, joint stipulation of facts with the court. Among the facts agreed to in the stipulation was that, "[p]ursuant to the rental [a]greement, *the total* [s]ecurity [d]eposit was $10,000." (Emphasis added.) "A formal stipulation of facts by the parties to an action constitutes a mutual judicial admission and under ordinary circumstances should be adopted by the court in deciding the case. . . . A party is bound by a judicial admission unless the court, in the exercise of a reasonable discretion, allows the admission to be withdrawn, explained or modified." (Internal quotation marks omitted.) *Wiblyi* v. *McDonald's Corp.*, 168 Conn. App. 77, 83 n.8, 144 A.3d 1075 (2016). During the trial, the defendants did not seek to withdraw, explain, or modify the stipulation. We agree with the plaintiff that, because the defendants are bound by their judicial admission that the total amount of the security deposit was $10,000, their claim that the $100,000 prepayment of rent also should have been treated as a security deposit necessarily fails. Accordingly, judgment correctly was rendered in favor of the plaintiff on the defendants' second amended counterclaim. See *Amsden* v. *Fischer*, 62 Conn. App. 323, 327, 771 A.2d 233 (2001) (this court "may affirm a trial court's decision that reaches the right result, albeit for the

wrong reason" (internal quotation marks omitted)).

The judgment is affirmed.

In this opinion the other judges concurred.

[1] This action was commenced against four former students of Fairfield University, the defendants Peter M. DeSalvo, Gary T. Davies, Jordan T. Greenfield, and Alexander Case Cramer (defendant students), along with their parents, the defendants Peter DeSalvo, Jean DeSalvo, Tom Davies, Sue Davies, Keith Greenfield, Tina Greenfield, and Peter J. Cramer (defendant parents). In this opinion, we refer to these parties collectively as the defendants, and individually by name or by group where necessary.

[2] General Statutes § 47a-2 exempts certain arrangements from application of title 47a of the General Statutes, which pertains to landlords and tenants. Section 47a-2 (a) provides in relevant part: "Unless created to avoid the application of this chapter and [section] 47a-21 . . . the following arrangements are not governed by this chapter and [section] 47a-21 . . . (1) Residence at an institution, public or private, if incidental to detention or the provision of medical, geriatric, educational, counseling or religious service, or any similar service . . . ."

[3] Our references in this opinion to § 47a-21 are to the 2013 revision of the statute.

[4] The claimed damages to the premises included the following: the wood floors needed to be refinished; the granite countertop in the kitchen was cracked; the kitchen faucet was broken; the kitchen sink was dislodged from the granite; the microwave was taped together with duct tape; kitchen cabinet doors were missing and cabinet drawers were broken; screens were ripped and torn; a sink drain in an upstairs bathroom was damaged and leaking; there were holes in the walls; the ceilings had marks all over them; some doors and doorjambs were broken; various bedrooms had broken things in them; the walls needed to be repainted; a toilet was clogged and needed to be cleared out; and some of the spindles on the stair rail needed repair.

[5] The court did not act on the plaintiff's late request and did not comment on it in its memorandum of decision.

[6] With respect to the claims of alleged zoning and housing code violations, the court found that the plaintiff did not authorize the defendants to violate the Fairfield zoning regulations under the lease, nor did the defendants meet their burden of establishing that the premises were uninhabitable under General Statutes § 47a-7.

[7] The plaintiff claims that "the exclusion was fully litigated at trial without objection by the defendants." The plaintiff bases this claim on the facts that the plaintiff rented the premises to the defendant students of Fairfield University and that the tenancy under the lease was for the academic school year. The plaintiff also points to the failure of the defendants to challenge, on appeal, the court's findings regarding Fairfield University's use of the plaintiff as a provider of housing for its students and that the university advertises the opportunity for seniors to live on Fairfield Beach as a recruitment tactic to attract students. We are not persuaded. First, we already have concluded that there was no evidence in the record to support the court's findings regarding Fairfield University and the university's use of the plaintiff as a provider of housing. In fact, the plaintiff's attorney acknowledged at oral argument before this court that there was insufficient evidence before the trial court to support its findings regarding Fairfield University and its lottery system and marketing. We also cannot conclude that the defendants were alerted to the issue that the plaintiff was exempt from application of the security deposit statute simply because the plaintiff entered into a lease with college students for a term that covered the students' senior year, especially when the plaintiff did not present any evidence of its alleged affiliation with the university, and the arguments and evidence at trial focused on the damage to the property and whether the $100,000 prepayment of rent was proper and constituted a security deposit for purposes of § 47a-21. This case simply does not present a situation where we can conclude that, despite the pleading deficiencies, the defendants were sufficiently apprised that the applicability of § 47a-2 was at issue. The plaintiff's reliance on *Parente* v. *Pirozzoli*, 87 Conn. App. 235, 241, 866 A.2d 629 (2005), for the proposition that, "when a matter required to be specially pleaded by a party is fully litigated at trial without objection from the opposing party, [any] objection to the special pleading requirement is deemed to have been waived" is, therefore, misplaced.

[8] We express no view as to whether the lease for the plaintiff's premises

would constitute residence at an institution incidental to the provision of educational services. See General Statutes § 47a-2 (a) (1) and footnote 2 of this opinion.

[9] We note that, in this appeal, the parties have not challenged the court's findings as to the damages incurred or its determination that the defendants had failed to establish their special defenses, as well as the other allegations of their second amended counterclaim.

---